UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK MISSUD, | No. C-12-5468 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| STATE OF CALIFORNIA, *et al.*, | **(Docket Nos. 45, 47)** |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

Pending before the Court are two motions to dismiss filed by Defendant City and County of San Francisco and Defendant State of California. Docket Nos. 45, 47. Plaintiff filed the instant action on October 15, 2012, alleging various conspiracies at various municipal and state government agencies. Plaintiff filed a first amended complaint on October 24, 2012; this is the currently operative complaint. Docket No. 12.

The Plaintiff in this case has been declared a vexatious litigant, and is the subject of two pre-filing review orders, which bar him from filing complaints against D.R. Horton, Inc. or any judicial entities without first obtaining leave of court. *See Patrick Missud v. State of Nevada, et al.*, C-11-3567 Docket No. 88 (N.D. Cal. Mar. 22, 2012); *Missud v. San Francisco Superior Court*, C-12-3117, Docket No. 74 (September 24, 2012).

In addition to filing oppositions to these two motions, Plaintiff has filed six separate requests for judicial notice over a period of a month, all purportedly in connection with these motions. These

requests for judicial notice attach hundreds of pages of documents of no discernable relevance to these motions. *See* Docket Nos. 50, 56, 59, 60, 62, 64.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff brings this suit against the State of California, the City and County of San Francisco (CCSF), the San Francisco Municipal Transportation Authority (SFMTA), AutoReturn, the "Bureau of Sidewalk Management,"[1] the Department of Building Inspection ("DBI"), the San Francisco Tax Assessor, and Does 1-2000. First Amended Complaint ("FAC") at 1. Plaintiff's complaint is rambling, and at times it is difficult to discern exactly what he is alleging. He includes a section titled "Class Action Allegations," but this section fails to provide any factual information on the putative class or plead anything more than bare legal conclusions to show that this case is a proper class action. FAC at 2-3. Plaintiff also spends much of the complaint rebutting defenses he anticipates the defendants will raise. FAC at 4-6.

Plaintiff states that he is bringing suit under § 1983 for deprivation of rights under color of law, and that he has standing to sue as a federal informant under 18 U.S.C. § 1513 and under a federal qui tam statute at 18 U.S.C. § 201. As best as can be discerned, the substance of this suit is based on allegations of six distinct conspiracies or patterns of governmental corruption.

A.   SFMTA and AutoReturn

Plaintiff alleges that SFMTA issues multiple citations in rapid succession to cars with expired registrations, and contracts with AutoReturn to tow the cars once they have accumulated five citations. *Id.* These cars are then sold at weekly vehicle auctions.[2] *Id.* Plaintiff alleges that this practice constitutes "an illegal taking under color of law or without notice" and "a major violation of the takings clause." *Id.* He further alleges that the City of San Francisco illegally enforces tickets that are defective because they do not list the last four digits of the car's Vehicle Identification Number. *Id.*

---

[1] Defendant CCSF states that there is no such department, and observes that Plaintiff's complaints seem directed and San Francisco's Department of Public Works (SFDPW). CCSF's Mot. to Dismiss at 4-5.

[2] Plaintiff offers no allegations about how long SFMTA keeps impounded cars before selling them. FAC at 7-8.

As this Court has previously noted in its denials of Plaintiff's applications for a temporary restraining order, Plaintiff does not allege that his car is in danger of being sold under this scheme. FAC at 7-8; Docket No. 23. He alleges only that the city issued him five citations in rapid succession, and that his car "was in imminent danger of towing and storage" which would have cost over him hundreds of dollars. *Id.*

In his opposition, Plaintiff raises a variety of new allegations about alleged misconduct by SFMTA. For some of these, he acknowledges that he has not been personally affected. Docket No. 54 at 5-6. For others, he alleges that he received tickets which he later challenged, such as a ticket for parking during street sweeping hours that was issued five minutes before the posted time. *Id.* at 4-5. Though Plaintiff's recitation of the facts is not entirely clear, it appears that he was successful in some or all of these challenges. *Id.*

B.   <u>San Francisco Sidewalk Maintenance</u>

Plaintiff alleges that the CCSF department responsible for sidewalk maintenance requires homeowners to replace sections of sidewalk in front of their homes when the city deems those sections to be defective. FAC at 8-9. The city can require such action even when the defects are minor, such as "quarter-sized divots of concrete or hairline cracks." *Id.* at 9. When homeowners do not make the repairs themselves, CCSF maintains jurisdiction to perform the repairs itself and bill the homeowner for the cost, even placing a lien on the property if the bill is not paid. *Id.* Plaintiff maintains, however, that CCSF at times bills homeowners for this service without actually performing the work. *Id.* Specifically, he alleges that "[o]n one very well-documented occasion in front of this very Class representative's home, the City billed three adjoining [homeowners] $1755.09 for [tree root service], though that Service never occurred." *Id.* Plaintiff alleges that CCSF thus uses the sidewalk repair program "to generate revenue and levy an illegal tax." *Id.* The complaint does not allege that Plaintiff was one of the homeowners so billed, though Plaintiff does so allege in his opposition to this motion. Docket No. 54 at 7.

C.   <u>Department of Building Inspection</u>

Plaintiff makes various allegations of corruption about the Department of Building Inspection and its former Director, Frank Chiu. FAC at 9-10. Plaintiff alleges that the FBI has

3

1  investigated charges of corruption at the DBI under Chiu's leadership. *Id.* at 9. He alleges that Chiu
2  favored certain contractors and approved their proposals without appropriate scrutiny. *Id.* Plaintiff
3  also alleges that Chiu prepared fraudulent expert witness statements in a state Superior Court case
4  that seems to have concerned allegations about defective construction. *Id.* Plaintiff notes that
5  Chiu's report "falsely list[ed] a variety of expensive defects which, for $ome reason, a team of his
6  very own trained building inspectors didn't find in a project they all passed years before when they
7  were Chiu's employees." *Id.*

8  Finally, Plaintiff states that he has been "contacted by City residents who uncovered
9  fraudulently issued permits to construct a restaurant where none originally existed," and where the
10 lot was not properly zoned for such use. *Id.* at 10. Plaintiff offers no allegations in his complaint
11 about how he personally has been harmed by any corrupt acts on the part of Chiu or other DBI
12 employees. In his opposition to CCSF's motion, however, Plaintiff claims that he represented the
13 contractor in the case where Chiu filed a fraudulent expert report, and that he has over $10,000 in
14 legal fees for which he was never compensated. Docket No. 54 at 8.

15 D.    San Francisco Tax Assessor's Office

16 Plaintiff makes similar allegations about the San Francisco Tax Assessor's office and its
17 former head Mabel Teng. FAC at 10-11. He alleges that Teng "sold her public office for kick-backs
18 to her contractor Mathew Huey," who Plaintiff also alleges was involved in Chiu's corrupt actions.
19 *Id.* at 10. Plaintiff alleges that Teng reassessed Huey's property at an artificially low value, and in
20 return Huey performed "shoddy construction services" on Teng's home, which she then sold to an
21 unsuspecting buyer. *Id.* This apparently resulted in litigation, in which Plaintiff alleges a corrupt
22 judge improperly compelled the parties to arbitrate. *Id.* Plaintiff alleges that because of corruption
23 in the Tax Assessor's office "it is very likely that other City home-owners are damaged either by
24 uncollected fee$ [sic] from the Assessor's other cronies, or have appraisals which are otherwi$e
25 $u$pect." *Id.* at 11. Again, Plaintiff offers no allegations about how he has been personally harmed
26 by this alleged corruption in his complaint. In his opposition to CCSF's motion, he alleges that he
27 represented the individuals who bought Teng's home for a flat fee, and then had to spend "inordinate
28

amounts of time" on the case such that CCSF should compensate him for one day's wages. Docket No. 54 at 9.

E. <u>San Francisco Superior Court</u>

Plaintiff offers a variety of conclusory and hyperbolic allegations about the corruption of San Francisco Superior Court judges. For example, he alleges that "the $uperior Court solely exi$t$ to fleece San Francisco ¢itizens at-will by corrupt official$ and judge$ alike." FAC at 11. He also alleges that the San Francisco Superior Courthouse is "full of felons" and that "[t]he number of judge$ going to prison for racketeering is greater than the number who aren't." *Id.* Plaintiff references a number of other court cases he has filed alleging judicial corruption, and states that in these cases he has already filed over 5,000 "'Smoking gun' documents" that show judicial and official corruption. *Id.* He offers no specific facts to support these allegations, nor does he allege that he has been personally harmed by any corruption on the part of Superior Court judges.

F. <u>State Courts of California</u>

Plaintiff offers similar conclusory allegations of corruption about California Appeals and Supreme Court judges and justices. FAC at 12. He states that these judges refuse to acknowledge corruption at the Superior Court level, and that they "rubberstamp their lower court colleague$' racketeering because to do otherwise would kill their golden-goose." *Id.* Again, Plaintiff offers no specific facts to support these allegations, nor does he allege that he has personally been harmed in any way.

### III.   DISCUSSION

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

5

plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

A. <u>SFMTA Claims</u>

Plaintiff alleges that his rights under the Takings Clause and Due Process Clause have been violated by SFMTA's actions in issuing him various parking tickets and towing his car for having an expired registration. This Court has rejected both of these theories in its previous orders denying Plaintiff's requests for a temporary restraining order, and Plaintiff offers nothing new on this motion that calls those rulings into question.

Plaintiff raises no cognizable claim under the Takings Clause of the Fifth Amendment because his allegations concern actions taken under the City's police powers. When the government seizes property in the exercise of its police powers, the Takings Clause is not applicable. *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330 (Fed. Cir. 2006). This is true even if the plaintiff alleges that the exercise of police power was illegitimate or unlawful. *Id.* ("a taking does not result simply because the government acted unlawfully"). Towing cars that have accumulated an excessive number of parking tickets is an exercise of police power, and not a taking for public purposes within the meaning of the Takings Clause. *Deligiannis v. City of Anaheim*, SACV 06-720 DOC(JC), 2010 WL 1444538 (C.D. Cal. Mar. 2, 2010) *report and recommendation adopted*, SACV 06-720DOC(JC), 2010 WL 1444535 (C.D. Cal. Apr. 3, 2010) *aff'd,* 471 F. App'x 603 (9th Cir. 2012).

Plaintiff's claim that SFMTA's ticket and tow practices violate his procedural due process rights also fails. Under the due process requirements of the Fourteenth Amendment, the government generally must give notice before seizing property. *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). The Ninth Circuit has recognized that a ticket previously left on a car's windshield is sufficient to meet the notice requirement for towing a car. *Id.* at 1096; *Scofield v. City*

*of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988). Here SFMTA's alleged policy is that a car is not subject to towing until it has received five citations. FAC at 7. Though Plaintiff alleges that they are often issued in rapid succession, his example for this is that he received three tickets in the space of 36 hours. *Id.* Even with this rate of issuing tickets, it would take two to three days to accumulate the necessary number of tickets to make a car eligible to be towed. This is sufficient notice to meet the requirements of due process. *See Clement*, 518 F.3d at 1095 (noting that one possible way of providing adequate notice would be to leave a ticket on the car's windshield and the return a few days later). Indeed, it appears from Plaintiff's opposition that he was well aware that his car's registration was expired prior to the towing incident and had been in communication with SFMTA about this fact; he alleges that "the $FMTA was on notice that the Truck's back-registration funds were earmarked at least 3 times, but then diverted to expose rampant Citywide corruption, including the $FMTA'$, and that towing would be considered interference with a federal informant." Docket No. 54 at 7. Under these circumstances, Plaintiff has failed to state a claim that towing his truck constituted a violation of his due process rights.

Plaintiff also argues that his due process rights were violated by several other defective tickets not mentioned in his complaint. *See* Docket No. 54 at 4-5. Even considering these additional allegations, it does not appear that Plaintiff raises a viable due process claim. As best as can be discerned from Plaintiff's opposition, he has successfully challenged these tickets. Courts have recognized that the requirements of due process are satisfied where a parking ticket provides notice of the charges and the procedures for challenging the ticket. *See Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (holding that there was no due process violation when city failed to provide separate written notice to recipients of parking tickets who failed to appear in court when the original ticket gave prominent notice of the consequences of failure to appear in capital letters); *Rector v. City & County of Denver*, 348 F.3d 935, 948 (10th Cir. 2003) (holding "that because Denver's tickets clearly notified recipients of the nature of the action and amount in contest, the demands of constitutional due process were satisfied"); *Herrada v. City of Detroit*, 275 F.3d 553, 557 (6th Cir. 2001) (holding that there was no due process violation where "the citation clearly states that a hearing is available to contest the City's allegation that the vehicle owner committed a

parking violation" even though "the citation and overdue notice might have contained false and misleading information regarding the penalties for failure to respond"); *Boguslavsky v. City of New York*, 173 F.3d 843 (2d Cir. 1999) (table) (holding that there was no due process violation where the plaintiff "was provided a hearing on the parking ticket underlying the booting incident and an opportunity to present evidence that the parking signs on the street were inadequate").

B.  Tree Root Service Claims

Defendant CCSF argues that Plaintiff's claim concerning the tree root service should be dismissed because he fails to raise a federal claim. Under 28 U.S.C. § 1331, a federal court has subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Neither Plaintiff's complaint nor his opposition state any basis for a federal cause of action based on the allegations of fraud or misconduct in the provision of tree root services. Defendant CCSF argues that Plaintiff has the option of pursuing administrative appeals through the Department of Public Works, and that if he was unsuccessful in that process, to bring a writ of mandamus in California state court. *See* Cal. Code Civ. Proc. § 1094.5. Plaintiff does not allege that he has made any attempt to challenge the billing for tree root service, or that the city's procedures for such challenges is so wholly inadequate as to amount to a violation of his due process rights.

As Plaintiff fails to raise a federal question regarding his tree root services allegations, this Court lacks subject matter jurisdiction to hear this claim.

C.  Department of Building Inspection and Frank Chiu

The only direct injury Plaintiff identifies to himself as a result of the alleged corruption at the Department of Building Inspection is allegedly fraudulent statements former DBI Director Frank Chiu made as an expert witness in a court case where Plaintiff represented one of the parties. Plaintiff apparently has a fee dispute with his client in this case, and argues that this gives him standing to bring suit against the DBI.

Under California law, statements made in the course of litigation are privileged and may not be used as the basis for later suits in tort. California Civil Code § 47(b) provides in part that "[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding." Cal. Civ. Code

§ 47(b). This privilege is absolute, not qualified. *See Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990). It applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action. *See id.* at 212. The principal purpose of the privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. *See id.* at 213. It is a defense to a number of torts, including intentional interference and defamation. *See Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1140 (1996) (stating that only malicious prosecution actions are exempt from § 47(b)). As Plaintiff's claim is based on Chiu's statements made in the course of litigation, it is barred by the litigation privilege under Section 47(b).

Additionally, the facts Plaintiff alleges do not provide a basis for bringing suit against the DBI. In his complaint, Plaintiff himself notes that Chiu was no longer a DBI employee at the time he made the allegedly fraudulent statements. While Plaintiff notes that the DBI had previously approved the construction project that was the subject of the litigation, it appears that he objects not to the approval, but to Chiu's later report stating that the construction was defective. Thus, even if Plaintiff's representation of one of the parties to that suit were to give him standing to bring a claim against Chiu, Plaintiff makes no allegations that would give him standing to bring suit against DBI.

Further, it would appear that this claim suffers from the same lack of federal question as the tree root service claim. For all of these reasons, Plaintiff's claims against the DBI are dismissed.

D.   <u>Tax Assessor's Office Claims</u>

Defendant CCSF argues that Plaintiff's claims against the Tax Assessor's Office should be dismissed because he fails to allege any basis for federal question jurisdiction over this claim. Defendant is correct that no federal claim can be discerned from Plaintiff's complaint or his opposition to the motion to dismiss. While he mentions the Federal Arbitration Act in setting forth this claim in his complaint, his FAA-related complaint seems to be against a state court judge who erroneously compelled arbitration in violation of the FAA. There is nothing in his complaint alleging that the Tax Assessor's Office violated the FAA, or suggesting that he has standing to bring a claim under the FAA against the Tax Assessor's Office. As Plaintiff's allegations state no claim

that would give rise to federal question jurisdiction, this Court lacks jurisdiction to hear this complaint.

E.     California State Court Claims

Defendant State of California correctly observes that the only allegations in the complaint with any connection to state government entities are the third and fourth claims, which bring general allegations of corruption by California state court judges. Defendant argues that these claims are barred by the Eleventh Amendment. The Eleventh Amendment provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend XI. As interpreted, the Eleventh Amendment bars suits in federal court against a state government by that state's citizens, by citizens of another state, or by citizens of a foreign state. *See Montana v. Goldin*, 394 F.3d 1189, 1195 (9th Cir.2005) (noting that, absent waiver, states and state agencies are immune under the Eleventh Amendment from private actions for damages or injunctive relief in federal court). Eleventh Amendment immunity extends to agencies of the state government and "arms of the state." *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997) (discussing whether a state instrumentality is "an arm of the State" for Eleventh Amendment immunity purposes); *Goldin*, 394 F.3d at 1195 (stating that, under the Eleventh Amendment, " 'agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court' ").

Plaintiff argues that there is an exception to the Eleventh Amendment for "[i]llegal actions taken by state actors under color-of-law." Docket 52 at 2. In this case, however, Plaintiff has sued not individuals acting under color of state law, but the State of California itself. This is presumably because any suits filed against the individual judges would be subject to the pre-filing order mentioned above. Plaintiff offers no argument or authority that there is an applicable waiver of Eleventh Amendment immunity in this case. Accordingly, his claims against the State of California based on allegations of corruption in the state judiciary are dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's complaint for failure to state a claim. Although this is the first time this Court has dismissed Plaintiff's claim in this case, dismissal with prejudice is warranted because Plaintiff cannot allege any cognizable claims. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir.2012) (district court may deny leave to amend when it would be futile).

This order disposes of Docket Nos. 45 and 47.

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: February 5, 2013

_____
EDWARD M. CHEN
United States District Judge